PER CURIAM.
 

 In this workers’ compensation case, the Judge of Compensation Claims (JCC) found Claimant waived his right to a previously ordered evaluation by an expert medical advisor (EMA). The JCC then cancelled the EMA evaluation and addressed the pending claims without the benefit of the EMA report or competent evidence supporting the cancellation. In doing so, the JCC reversibly erred.
 

 Background
 

 On July 27, 2007, Claimant, a police officer, strained his quadriceps tendons bilaterally and the Employer/Carrier (E/C) accepted compensability of the knee injuries. As a part of Claimant’s treatment regimen, he was provided anti-inflammatory medications, and, to combat their side-effects, Zantac.
 

 On October 29, 2009, Claimant filed a petition for benefits, seeking a determination of the “compensability and or treatment of the claimant’s gynecomastia
 
 *
 
 due to the medication that Dr. Yee, the authorized doctor, prescribed him,” as well as attorney’s fees and costs. The E/C, after having Claimant evaluated by Dr. Vidalon, and obtaining an independent medical examination with Dr. Cohen, denied com-pensability of the gynecomastia.
 

 Claimant notified the JCC that he believed there to be a disagreement in the medical opinions of Drs. Vidalon and Cohen. After reviewing the opinions, the JCC agreed and, in a non-final order rendered September 22, 2010, appointed an EMA to address “the issues of 1) whether the Claimant has gynecomastia, 2) the cause of the gynecomastia, and 3) what treatment is recommended.”
 

 It took several months to locate a physician willing and able to perform the evaluation, but an appointment was scheduled for December 2010. Claimant asked that it be re-scheduled due to a conflict; the new date was January 17, 2011. When the EMA doctor advised the JCC that Claimant did not appear for the examination, the JCC scheduled a status conference. Claimant’s attorney indicated he did not know why his client failed to appear at the appointment and was trying to contact him. The appointment was re-scheduled once again, this time for March 3, 2011.
 

 On February 23, 2011, Claimant filed a motion to submit the medical records of Dr. Masse to the EMA, explaining that Dr. Masse had already performed surgery to address Claimant’s gynecomastia. The E/C objected to the motion and filed a
 
 *1223
 
 motion to dismiss Claimant’s claims. The E/C argued that Claimant’s unilateral decision to undergo surgery prevented the EMA from answering the questions put to him and that the E/C had been prejudiced in its ability to defend the claims; thus, the only possible solution was dismissal of the claims.
 

 The JCC found that Claimant, by undergoing surgery, altered his condition to such a degree that an evaluation by the EMA would be futile. Further, the JCC found that, because the only treatment for gynecomastia was excision of the breast tissue, the EMA would not be able to determine whether Claimant indeed had gynecomastia. She concluded that the claims for the determination of the com-pensability and authorization for treatment for Claimant’s gynecomastia were moot because Claimant had undergone the surgery, the only treatment recommended for the condition. Because Claimant failed to meet his burden of proof, the JCC denied and dismissed the claims.
 

 Analysis
 

 Section 440.13(9)(c), Florida Statutes (2007), mandates the appointment of an EMA if there is a disagreement among healthcare providers. This court has made this clear in a number of cases and various circumstances.
 
 See, e.g., Chapman v. Nationsbank,
 
 872 So.2d 390, 393 (Fla. 1st DCA 2004) (holding failure to appoint EMA “cannot be justified on the basis that the JCC disagreed with and rejected the contrary opinion of an expert”);
 
 AT & T Wireless v. Frazier,
 
 871 So.2d 939, 940 (Fla. 1st DCA 2004) (holding appointment of EMA mandatory once JCC is made aware of conflict in medical evidence, even if EMA was not requested by either party and conflict becomes apparent only after merits hearing has begun);
 
 Broward Children’s Ctr., Inc. v. Hall,
 
 859 So.2d 623, 628 (Fla. 1st DCA 2003) (holding appointment of EMA is mandatory even if resort to administrative rule addressing selection of temporary EMA must be had);
 
 Palm Springs Gen. Hosp. v. Cabrera,
 
 698 So.2d 1352, 1356 (Fla. 1st DCA 1997) (holding whether to appoint EMA is not within discretion of JCC). Here, the JCC found a disagreement between the opinions of two healthcare providers, and neither party disputes this finding.
 

 Here, Claimant’s decision to move forward with' the surgery before the EMA appointment cannot justify, without record medical evidence suggesting otherwise, “withdrawal of the EMA order.” The JCC’s findings that it would be “futile” for the EMA to examine Claimant and'that the doctor “would not-be able to determine” whether Claimant had gyneco-mastia are speculative and simply not supported by the medical evidence. Dr. Basa-dre, the EMA appointed by the JCC, did not issue an opinion, nor was he deposed. Certainly, -Claimant’s decision to have the surgery complicates matters, and could ultimately result in the denial of some or all of his claims, but dismissal of his claims was not warranted at this juncture, particularly in light of the JCC’s finding that Claimant did not willfully disobey an order.
 
 See Martinez v. Collier County Pub. Sch.,
 
 804 So.2d 559, 561 (Fla. 1st DCA 2002) (holding dismissal too severe a sanction even if “good cause” was not shown).
 

 The JCC’s finding that the E/C would be prejudiced by allowing the EMA physician to review the surgeon’s records is also speculative and not supported. Medical history given to, and information as to diagnosis and treatment provided by, unauthorized physicians is admissible evidence; in contrast, their medical opinions are not.
 
 See Office Depot, Inc. v. Sweikata,
 
 737 So.2d 1189, 1191 (Fla. 1st DCA 1999) (holding it was reversible error to
 
 *1224
 
 exclude deposition of unauthorized physician under section 440.18(5)(e), Florida Statutes and explaining: “Dr. Kasabian’s deposition consisted only of a factual report of the information contained in his office records regarding claimant’s visits to him for back pain in 1992. Dr. Kasabian enumerated what Sweikata’s complaints and his diagnosis had been and the treatment he had prescribed, but he offered no medical opinion regarding any of these matters.”).
 

 Even though the JCC here was clearly frustrated with Claimant’s conduct, and perhaps justifiably so, that frustration cannot override mandatory statutory provisions. The JCC abused her discretion in cancelling the EMA evaluation. Because the JCC erred in deciding the claims without the benefit of the EMA’s opinion, and ultimately denying those claims, her denial of attorney’s fees and costs was also premature. Accordingly, these issues are hereby REVERSED and the matter REMANDED for further proceedings, including the possibility of taking additional evidence.
 

 BENTON, C.J., WOLF and VAN NORTWICK, JJ„ concur.
 

 *
 

 "Gynecomastia” is defined as "[ejxcessive development of the male mammary glands.”
 
 Stedman's Medical Dictionary
 
 676 (25th ed. 1990).